UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MICHAEL A. TANZI**,

    **Plaintiff**,

v.                                                   Case No.: 4:25cv144-TKW-MAF

**RON DESANTIS, et al.**,

    **Defendants**.

_____/

## ORDER DENYING STAY OF EXECUTION

The plaintiff, Michael Tanzi, is under an active death warrant.[1]  His execution is scheduled for Tuesday, April 8, 2025, at 6:00 p.m.

On April 1, 2025, at 5:12 p.m., Tanzi filed a complaint for injunctive relief under 42 U.S.C. §1983 alleging that he was denied procedural due process in his state clemency proceeding.  The thrust of the complaint is that Tanzi did not have a full and fair opportunity to make his case for clemency because his appointed clemency attorney was "incompetent and conflicted" and the clemency investigation

---

[1] Tanzi pled guilty to the 2000 kidnapping and murder of Janet Acosta and the jury unanimously recommended (and the judge imposed) a death sentence.  Tanzi's conviction and sentence became final in 2008, *see Tanzi v. State*, 964 So.2d 106 (Fla. 2007), *cert. denied*, 552 U.S. 1195 (2008), and the denial of his last postconviction motion before his death warrant was signed became final in 2018, *see Tanzi v. State*, 251 So.3d 805 (Fla.), *cert. denied*, 586 U.S. 1004 (2018).

and interview focused on aggravating circumstances rather than whether Tanzi was "worthy of mercy."

Along with the complaint, Tanzi filed an emergency motion to stay his execution. *See* Doc. 2. Defendants ("the State") were ordered to respond to the motion on an expedited basis, which they did. *See* Doc. 10. Tanzi was afforded an opportunity to file a reply, which he did. *See* Doc. 23.

The motion to stay is fully briefed and is ripe for a ruling. No hearing is needed to rule on the motion.

The Court may only grant a stay of execution if the inmate establishes "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Barwick v. Governor of Fla.*, 66 F.4th 896, 900 (11th Cir. 2023). The inmate has the burden to satisfy each of these requirements to obtain a stay, but "[t]he 'first and most important question' … is whether he can demonstrate a substantial likelihood of success on the merits." *Id.* at 902 (quoting *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016)).

It is well established that "clemency is 'discretionary' and is 'granted as a matter of grace.'" *Id.* at 903 (quoting *Valle v. Sec'y, Fla. Dep't of Corr.*, 654 F.3d 1266, 1268 (11th Cir. 2011). Thus, to comport with the Due Process Clause, the

state's clemency process must only provide "*minimal* procedural safeguards." *Id.* (quoting *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in the judgment) (emphasis in original)).[2] That simply means the state's clemency process must include enough safeguards to "ensure that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1036-37 (11th Cir. 2001).

Tanzi's clemency proceedings commenced in April 2023. The proceedings consisted of (at least) a review of Tanzi's criminal records in Florida and Massachusetts; a review of Tanzi's Department of Correction records; an attempted psychological evaluation of Tanzi (he refused to be evaluated); an interview of Tanzi by a member of the Florida Commission on Offender Review; and a post-interview "brief" filed by Tanzi's appointed clemency attorney.

The clemency interview was held on October 12, 2023. The record does not include a transcript of the interview, but Tanzi claims that he was "interrogated … at length" during the interview regarding his involvement in another murder and that

---

[2] The Court did not overlook Tanzi's argument that *Barwick* and other Eleventh Circuit cases applying *Woodard* cannot be reconciled with the Supreme Court's post-*Woodard* decisions in *Harbison v. Bell*, 556 U.S. 180 (2009) and *Herrera v. Collins*, 506 U.S. 390 (1993). However, even if that is correct (and it likely isn't because those cases were not about the extent of due process required in clemency proceedings), this Court would still be bound by *Barwick*. Any argument about the correctness of the Eleventh Circuit's case law should be directed to that court or the Supreme Court—not this Court.

3

the interview was "abruptly terminated" when his clemency attorney objected to that line of inquiry.  Notably, however, Tanzi does not claim that he was denied the opportunity to provide any mitigating evidence or information during the interview before it was terminated.

The post-interview "brief" filed by Tanzi's clemency attorney provided mitigating information about Tanzi, including:  positive comments about Tanzi from his trial attorney; a summary of his rehabilitative efforts and activities while on death row; the fact that he had no father figure or role model; and the fact that he had little experience with properly interacting with women due to his years in a home for troubled boys between the ages of 13 and 18.  However, because the clemency attorney was not familiar with the mitigating evidence produced during his postconviction proceedings (and was not provided that information by Defendants), the "brief" he submitted did not provide other mitigating information, such as the years of physical and sexual abuse Tanzi suffered, his genetic and mental health disorders, or that the victim's friends testified that she was opposed to the death penalty.

Tanzi was not informed of the outcome of the clemency process until March 10, 2025, when the Governor signed his death warrant.  Tanzi filed this action three weeks later.

Tanzi argues in his filings that he was not even provided "minimal" due process in the clemency proceeding and that a stay is warranted so he can adjudicate his due process claim "without the exigencies of an active death warrant." The State responds that a stay should be denied because Tanzi was dilatory in bringing this action, his due process claim has no likelihood of success, and the other stay factors weigh against granting a stay. The Court agrees with the State that Tanzi is not likely to succeed on the merits of his due process claim.[3]

There is no constitutional right to clemency, so there is no constitutional right to effective assistance of counsel in clemency proceedings. *See Bowles v. DeSantis*, 934 F.3d 1230, 1251 n.8 (11th Cir. 2019). Thus, even if Tanzi is correct that his appointed clemency attorney did not provide competent representation in the clemency process, that would not entitle him to any relief. *See, e.g., Banks v. Sec'y, Fla. Dep't of Corr.*, 592 F. App'x 771, 773-74 (11th Cir. 2014) (concluding that Florida's clemency process was constitutionally adequate even though inmate's

---

[3] The Court is sympathetic to the State's argument that Tanzi was dilatory in bringing this action and seeking a stay because the bulk of the issues he complains about occurred in 2023, but the stay will not be denied on that ground because the Eleventh Circuit rejected a similar argument in *Barwick*. *See* 66 F.4th at 902 (noting that the timing of the inmate's lawsuit challenging the clemency process in relation to his execution date was attributable to "the Governor's decision to simultaneously deny clemency and issue the death warrant"). That said, the fact that Tanzi waited three full weeks after the clemency denial (as compared to only 10 days in *Barwick*) and then filed the complaint and motion to stay after normal business hours without providing advance notice of the case to the Clerk and without providing a copy of his filings to the attorney for the State raises the proverbial judicial eyebrow about the true intent of this action. *See Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (stating that the court can consider "last-minute attempts to manipulate the judicial process" when considering the equities of a stay).

postconviction attorney could not represent him in clemency proceeding and his clemency attorney was ineffective).

Moreover, even with the allegedly poor representation that Tanzi received from his clemency attorney, he has not shown that he was not afforded at least "minimal" due process in his clemency proceeding.  Notably, Tanzi does not argue that his clemency proceedings did not comport with the state's clemency rules and it is undisputed that he was given notice of the clemency interview and an opportunity to present mitigating evidence and information at and after the interview—which was found sufficient in *Woodard*. *See* 523 U.S. at 290 (O'Connor, J., concurring in part and concurring in the judgment) ("The process [the inmate] received, including notice … and an opportunity to participate in an interview, comports with [the state's] regulations and observes whatever limitations the Due Process Clause may impose on clemency proceedings."). Also, although Tanzi faults his clemency attorney for not coordinating with his longtime state postconviction attorney to provide more expansive mitigating information in his post-interview "brief," he does not explain why he could not have gotten that information from his postconviction attorney and submitted it himself if he wanted it to be considered.

On the latter point, the Court did not overlook Tanzi's allegation that the state postconviction attorney was not made aware of the clemency process or informed about each stage in the process.  However, he cites no statute, rule, or case requiring

such notice.  Moreover, it is undisputed that Tanzi was aware that the process was ongoing by October 2023 at the latest when his clemency interview was held and there was ample time between then and the denial of clemency in March 2025 for Tanzi to present any additional mitigating evidence he wanted to be considered in the clemency determination.  *See Zack v. Governor of Fla.*, 2023 WL 6376654, at *5 (11th Cir. 2023) ("No provision in the Clemency Rules … prevented [the inmate] from providing supplemental materials if he believed they would bolster his clemency application.").

The Court also did not overlook Tanzi's allegations that he did not "initiate or opt into" the clemency process and that he was not told that he could "opt out" of the process.  However, he fails to explain how that has any bearing on whether he was afforded due process in the clemency process.  Indeed, even if his participation in the interview was involuntary in the sense that he was not told that he was not required to participate in it, he was in the same position as an inmate who participated in the interview voluntarily—he was free to answer questions in hopes of improving his chances of being granted clemency or remain silent so as not to incriminate himself in other matters despite the adverse inference that might be drawn from that silence in the clemency process.  *See Woodard*, 523 U.S. at 287-88.

In sum, for the reasons stated above, Tanzi has not established that he is substantially likely to succeed on his claim that he was denied procedural due process in his clemency proceeding.[4] Accordingly, it is

**ORDERED** that Tanzi's emergency motion for stay of execution (Doc. 2) is **DENIED**.

**DONE AND ORDERED** this 3rd day of April, 2025.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because Tanzi has not established a substantial likelihood of success on the merits of his due process claim, the Court need not consider the other stay factors. *See Barwick*, 66 F.4th at 902. However, for sake of completeness, the Court agrees with Tanzi that he would suffer irreparable injury if he was executed without having been afforded an opportunity for clemency under a constitutional process, but the other stay factors weigh in the State's favor because the State (and the public) has a "strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).